**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. CA Bar No. 330990
1925 Century Park E #1700
Los Angeles, CA 90067
scott@edelsberglaw.com
Office: (310) 438-5355
Fax: (786) 623-0915

**SHAMIS GENTILE, P.A.**
Joshua Moyer, Esq.
California Bar No. 259908
jmoyer@shamisgentile.com
401 W. A street, Suite 200
San Diego, CA 92101
Office: (305) 479-2299
Fax: (786) 623-0915

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOAN ST. JULIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance company,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

# CLASS ACTION COMPLAINT

Plaintiff Joan St. Julian ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint against State Farm Mutual Automobile Insurance Company ("State Farm"), and in support thereof states the following:

## INTRODUCTION

1. This is a class action lawsuit brought by Plaintiff, the named insured under a State Farm automobile policy issued for private passenger auto physical damage including comprehensive and collision coverage (the "Policy"). Defendant's Policy promises payment of "Actual Cash Value" ("ACV") in the event of a total loss of an insured vehicle. Pursuant to the terms of the Policy, ACV includes, *inter alia*, State sales tax.

2. Defendant State Farm is one of the largest passenger auto insurance carriers operating in the State of California. One of the coverages State Farm sells to consumers is comprehensive and collision coverage. State Farm systematically and uniformly underpaid Plaintiff and thousands of other putative Class Members amounts owed its insureds who suffered the total loss of an insured with comprehensive and collision coverage.

3. Pursuant to its standard Policy form language, State Farm is obligated to pay insureds sales tax in making payment to insureds who suffer the total loss of an insured vehicle. The ACV of insured property, including automobiles, is not based on the amount, if any, originally paid by the insured for the total loss vehicle, nor on the amount, if any, paid by the insured to replace the total loss vehicle. Similarly, the amount of sales tax owed is not based on the amount in sales tax, if any, originally paid by the insured for the total loss vehicle, nor on the amount paid, if any, to replace the total loss vehicle; instead, the amount of sales tax owed is based on the underlying adjusted vehicle value of the total loss vehicle at the time of loss ("ACV sales tax").

4. This lawsuit is brought by Plaintiff individually and on behalf of all other similarly situated insureds who have suffered damages due to State Farm's practice of refusing to pay full ACV sales tax to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages.

5. The failure to pay ACV sales tax on first-party total losses owed to State Farm insureds pursuant to State Farm's uniform policy language constitutes a breach of the policy.

## THE PARTIES

6. Plaintiff Joan St. Julian is domiciled and resides in Alameda County, California, and is a citizen of the State of California.

7. At all times material hereto, State Farm is and was a foreign corporation located in the State of Illinois, incorporated in Illinois and with its principal place of business in Illinois, and authorized to transact insurance in the State of California.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiff is a member of the putative class, which consists of at least 100 members, and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

9. Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

10. Assignment to the Oakland Division is proper under Civil Local Rules 3-2(c) and 3-2(e) because a substantial part of the events giving rise to Plaintiff's claims occurred in Alameda County.

## AMOUNT IN CONTROVERSY

11. Upon information and belief and the investigation of their attorneys, including total loss rates per physical damage premiums written by Defendant (and other insurers), during the relevant time period, Defendant adjusted, at minimum, approximately 115,000 total loss claims. Upon information and belief, approximately 10% of such total loss claims were not paid sales tax owed under a given Policy. Assuming an average vehicle value of $15,000 and a sales tax rate of 8.5%, the amount-in-controversy easily exceeds $10,000,000, exclusive of interest, costs, and attorney's fees.

**FACTUAL ALLEGATIONS**

**A.     The State Farm Policy**

12.     Defendant State Farm's policy language as to comprehensive and collision coverage for ACV of total loss vehicles is standardized and is present in State Farm auto policies issued by Defendant in California. Indeed, Plaintiff and all putative Class members were insured under a standard, form policy that includes identical material language. The Policy under which Plaintiff was insured, which is materially identical to the Policy under which all putative Class members were insured, is affixed hereto as Exhibit A.

13.     In a section of the Policy, entitled "PHYSICAL DAMAGE COVERAGES", State Farm states that it: "will pay for ***loss caused by collision*** to a ***covered vehicle***." Policy at 19 (emphasis in original).[1]

14.     The Policy also states that State Farm will pay "for ***loss***, except ***loss caused by collision***, to a ***covered vehicle***…" *Id*.

15.     "Covered Vehicle" is defined as, *inter alia*, any vehicle "(1) ***your car***; (2) a ***newly acquired car***; (3) a ***temporary substitute car***...." *Id*. at 18.

16.     "Loss" is defined as "direct, sudden, and accidental damage" the insured auto. *Id*.

17.     If a vehicle is directly and accidentally damaged, State Farm promises to repair or replace the damage to the vehicle, or to do so in money.

18.     Consistent with universal insurance industry standards, then, when a vehicle sustains "loss," State Farm restores the vehicle to its pre-loss condition by repairing the damage to the vehicle, including replacement of component parts. The cost to repair or replace the damaged property includes sales tax.

19.     State Farm's liability for loss is not limited, however. When paying to restore the vehicle by paying the cost to repair or replace, State Farm's liability is limited to parts of like kind and quality,

---

[1] Unless otherwise indicated, the emphasis within the quotations of Plaintiff's Complaint are in the Policy.

and it does not include any resulting inherent diminution in the value of the vehicle caused by the accident after repairs are completed.

20. State Farm is not always required to pay the cost to repair (including replacement of component parts). Instead, State Farm's liability is also limited to, *inter alia*, "the actual cash value of the **covered vehicle** minus any applicable deductible." *Id*. at 21. As such, if State Farm determines that the cost to repair or replace the damage to the vehicle is higher than the vehicle's pre-loss ACV (less its salvage value), State Farm is not obligated to pay to repair the vehicle. Instead, State Farm is permitted to invoke the ACV limit on liability and pay only the ACV amount (less any deductible and salvage value, if applicable). In such scenarios, where State Farm chooses to only pay ACV, State Farm refers to the loss as a "total loss". In other words, a "total loss" is the term State Farm uses, along with every other insurer, when it chooses to pay ACV rather than paying the (higher) costs to repair the vehicle to restore it to its pre-loss condition.

21. For example, consider a hypothetical where a vehicle with a pre-loss ACV of $5,000.00 is in an accident, and State Farm determines that the amount of loss – the cost to fix the vehicle by repairing the damage and replacing a few component parts – is $2,000.00. This would be what State Farm calls a "partial loss" and State Farm's obligation is to pay the $2,000.00 (either directly to the repair facility, or in money to the insured, who can then either keep the money and drive around an unrepaired vehicle or can use the money to fix the vehicle). In the same hypothetical, however, if State Farm determines that the cost to repair the damage is $6,000.00, State Farm is not obligated to pay the full loss amount. Instead, State Farm can invoke the ACV limit on liability and pay only the $5,000.00 ACV amount. This would be what State Farm calls a "total loss".

22. Actual cash value is undefined in the policy.

23. There is no difference, for purposes of Defendant's duty to pay ACV on a first-party total loss claim, between a collision total loss claim and a comprehensive total loss claim. *See generally id*.

24. There is no difference and no distinction in the Policy between owned, financed, and leased vehicles. In fact, the Policy specifically asserts that "owned" includes a lease vehicle "if the lease is written for a period of 31 or more consecutive days." *Id*. at 4.

25. The policy language does not define ACV to (1) exclude sales tax from ACV; (2) defer payment of the ACV sales tax for any purpose whatsoever; or (3) require an insured to obtain a replacement vehicle at all; or (4) link the amount of ACV sales tax to amounts originally paid for the total loss vehicle or amounts actually incurred in replacing the total loss vehicle.

26. The ACV of the insured vehicle is an independent amount. The ACV is the same whether the insured paid nothing for the total loss vehicle, paid less than what the vehicle was worth, or paid more than what the vehicle was worth. The ACV is the same whether the insured replaces the vehicle with a more expensive vehicle, a less expensive vehicle, or chooses not to replace the vehicle at all.

27. The policy language applies to all covered autos irrespective of ownership interests—whether owned, financed or leased, insured autos are considered "owned" or are treated and defined identically for purposes of the policy.

**B.  Sales Tax is a Replacement Cost**

28. Sales tax is a mandatory cost imposed by the State of California on every vehicle purchase. There is no exception to the imposition of sales tax for insureds replacing a total loss vehicle. It is impossible to replace a total loss vehicle—or to purchase any vehicle under any circumstances—without payment for sales tax.

29. As set forth above, State Farm promises to pay the ACV of an insured vehicle in the event of, *inter alia,* a total loss. Sales tax is incontrovertibly an element of the replacement cost of the vehicle and is therefore incontrovertibly an element of the ACV of the insured vehicle.

30. Even if State Farm cannot or did not invoke its ACV limit on liability and the obligation is to pay the cost to repair or replace the vehicle, such costs would include sales tax.

31. Thus, sales tax is inherently part of the costs to replace an insured property, including a vehicle. *Johnson v. Hartford Cas. Ins. Co.*, 2017 WL 2224828, at *8 (N.D. Cal. May 22, 2017) (citing

*Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp. 2d 825, 831-32 (N.D. Tex. 2011) (explaining that the "ordinary meaning of replacement costs" in the context of ACV is "a composite of all reasonably foreseeable repair or replacement costs, including . . . sales tax"); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[T]he cost to repair and replace property with new materials would necessarily include the state and local taxes on the materials purchased to make the repairs.")).

### C. State Farm Systematically Fails to Pay Sales Tax

32. Under the terms of the Policy, therefore, the ACV of a vehicle is the adjusted vehicle value, *plus sales tax* calculated as a percentage of the adjusted vehicle value. Thus, the amount owed insureds who suffer a total loss is the adjusted vehicle value, plus sales tax calculated as a percentage of the adjusted vehicle value, less any applicable deductible and salvage retention value.

33. Nevertheless, in California, State Farm uniformly did *not* pay the sales tax owed as a part of the ACV replacement costs.

34. State Farm's Policy does not contain any provision or clause stating State Farm will pay only a prorated or partial amount of the costs to replace the insured vehicle. Instead, State Farm simply promises to pay the costs to replace the vehicle.

35. State Farm's Policy does not distinguish between owned, financed, and leased vehicles; instead, it explicitly treats them the same for purposes of ACV payments. It promises to pay precisely the same amount to every policyholder.

36. State Farm's Policy promises payment of full sales tax as part of the cost to replace the vehicle, without taking into account, for example, what amount, if any, was previously paid for the vehicle, nor what amount, if any, is actually incurred in replacing the vehicle. In fact, if the insured received the vehicle as a gift and, therefore, paid no sales tax at all, the ACV of the insured vehicle, according to the terms of the Policy, is nevertheless unaffected. If the insured does not replace the total loss vehicle at all, the ACV of the vehicle is unaffected. State Farm's Policy does not condition payment of ACV on actual replacement. *See generally* Policy.

### D. Plaintiff's Total Loss Claims

37. At all times material hereto, Plaintiff insured a 2010 Bentley Continental GTC Speed Turbo 4WD 2D Convertible, VIN # SCBDP3ZAXAC062471.

38. Plaintiff insured the 2010 Bentley Continental GTC Speed Turbo 4WD 2D Convertible, (the "insured vehicle") under an insurance policy issued by Defendant. Exhibit A (Policy); Exhibit B (Decl. Sheet). Defendant insured Plaintiff's vehicle according to this Policy at all times material hereto.

39. On or about March 18, 2021, Plaintiff was involved in an accident while operating the insured vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 05-17P3-46H.

40. State Farm determined that the cost to repair or replace the damage to the vehicle and thus restore the vehicle to its pre-loss condition was higher than the vehicle's ACV less salvage value. As such, State Farm determined that the vehicle was what State Farm calls a "total loss" and invoked its ACV limit on liability. In so doing, State Farm chose to not pay to repair the vehicle but rather to consider it a salvage, unrepairable vehicle.

41. In other words, as determined by State Farm, the amount of loss exceeded ACV. Plaintiff does not contest State Farm's determination of the amount of loss, nor that such amount was higher than ACV and constituted a "total loss". Plaintiff accepts that State Farm is permitted to only pay ACV (less deductible).

42. Following the filing of said claim, State Farm determined that the adjusted value of the insured vehicle was $72,219.00. Exhibit C (Total Loss Settlement Letter). Plaintiff does not contest State Farm's determination of the underlying adjusted vehicle value.

43. State Farm added title transfer fees of $15.00, subtracted the deductible of $500.00, but did not include any amount for sales tax. *Id.*

44. State Farm then made a total payment of $71,734.00. *Id.*

45. The applicable sales tax based on Plaintiff's residency was 10.25%. Specifically, Plaintiff was owed sales tax in the amount of 6% state sales tax, plus local taxes of 4.25%, of the adjusted vehicle

-7-
CLASS ACTION COMPLAINT

value of her insured vehicle. Thus, the ACV sales tax owed as a part of the ACV of the insured vehicle was $7,402.45.

46. State Farm did not include sales tax in making its (purported) ACV payment, thereby breaching the terms of Plaintiff's Policy.

47. Sales tax is a mandatory applicable cost that must be paid to replace or purchase any vehicle in the State of California.

48. In breach of its contract with Plaintiff, State Farm did not include any sales tax in making the ACV payment for Plaintiff's total loss.

49. Even if State Farm owes the cost to repair or replace the vehicle and not ACV, such cost would necessarily include sales tax, and thus State Farm nevertheless breached the Policy.

50. Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit insufficiently— State Farm acknowledged that Plaintiff satisfied all conditions precedent required under the Policy.

## **CLASS ACTION ALLEGATIONS**

51. Plaintiff brings this action seeking representation of a class pursuant to Federal Rule of Civil Procedure 23.

52. Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> All individuals insureds under a California policy issued by State Farm Mutual Automobile Insurance Company covering an insured vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim determined by State Farm Mutual Automobile Insurance Company to be a total loss, and where the total loss payment did not include sales tax calculated as the applicable state and local percentage of the adjusted vehicle value ("ACV Sales Tax") within four years prior to the date on which this lawsuit was filed through the date of any certification order.

53. Certification of the above class is supported by the following considerations:

   a. The relatively small amount of damages that members of the class have suffered on an individual basis would not justify the prosecution of separate lawsuits;

   b. Counsel in this class action are not aware of any previously filed litigation against State Farm in which any of the members of the class is a party; and

   c. No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

54. Although the precise number of members of the Class are unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff understands Defendant to be one of the largest motor vehicle insurers in the State of California—one that writes millions of dollars of physical damage coverage premiums. Thus, the class of persons affected by Defendant's unlawful practice alleged herein consists of thousands of individuals, or the class of persons effected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a systematic and uniform practice, employed by Defendant in violation of standardized and uniform insurance policy language, which results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the Class members.

55. The precise number of members of the Class can only be determined through discovery. However, upon information and belief, including investigation by their attorneys and public information concerning the statistical likelihood of total losses per premiums written, Plaintiff believes the Class is comprised of thousands of members. Numerosity under Rule 23(a)(1) is established.

56. Rule 23(a)(2)'s commonality requirement is also satisfied. The central issues in this litigation turn on the interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Defendant and all members of the Class, including Plaintiff, are bound by materially identical policy terms.

57. As to the Class, common questions that are subject to common resolution include (but are not limited to): (1) whether, under the Defendant's standardized policy language, insureds are owed sales tax upon the total loss of an insured vehicle.

58. Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiff and members of the Class were injured by Defendant's uniform misconduct. Further, Plaintiff and Class members' legal claims arise from the same core practices: namely, the failure to pay the full ACV of insured vehicles on first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the members of the Class. Plaintiff suffered the same harm as all other members of the Class: the coverage for sales tax that Defendant failed to pay or underpaid its insureds. Plaintiff is not subject to any unique defenses nor does Plaintiff bring any unique claims.

59. The relevant Policy provisions for each Class member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class member is the same.

60. Rule 23(b)(3)'s predominance requirement is satisfied. The previously articulated common issues of fact and law predominate over any question solely affecting individual Class members. As to the Class, the critical common issue—whether Defendant's promise to pay the ACV of the total loss vehicle obligates it to include ACV sales tax to insureds—is identical for every member of the Class.

61. Further, the measure of damages, if any, is the same for every member of the Class, and any variances in damages will reflect only variances in underlying vehicle values (some vehicles are more expensive than others, and thus the applicable ACV sales tax owed will be different), the application of which is a purely ministerial function. Otherwise, there are no individualized questions of fact or law.

62. Further, Rule 23(b)(3)'s superiority requirement is met here: class treatment is superior to any other alternative method of adjudication because the damages suffered by individual members of the Class is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class members to seek individual redress for the wrongs done to them. Even if some members of the Class could afford individual litigation, the court system could not. Thousands of individual cases asserting precisely the same claim that Plaintiff asserts here would be uneconomical and would strain (indeed, likely overwhelm) judicial resources.

63. As to the Class, class treatment is superior because every claim—all based on uniform conduct and a form contract—will be substantially determined by answering the single question of whether Defendant's Policy obligates payment of sales tax. It is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. No difficulty would be encountered in the management of this case that would preclude its maintenance as a class action. To the contrary, several other similar total loss class actions against other insurers were successfully treated as class actions.

64. Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiff possesses no conflict with members of the Class. Plaintiff's claim does not conflict with that of any member of the Class, and Plaintiff has no financial or any other interest conflicting with those of the Class. Plaintiff fully intends to vigorously protect the interests of Class members in prosecuting these claims.

65. Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Moreover, Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include ACV Sales Tax after total losses.

### CLAIM FOR RELIEF
### BREACH OF CONTRACT FOR FAILURE TO PAY ACV SALES TAX
#### (By Plaintiff on Behalf of Plaintiff and the Class)

66. Plaintiff incorporates by reference paragraphs 1-65 as though fully set forth herein.

67. Plaintiff was party to an insurance contract with Defendant as described herein. All Class members were parties to insurance contracts with Defendant containing materially identical terms.

68. The interpretation of Plaintiff's and all Class members' Policies is governed by California law.

69. Plaintiff and all Class members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

70. Defendant, by paying the total loss claim, determined that Plaintiff and each Class members complied with the terms of his or her insurance contract, and fulfilled all required duties and conditions under the Policy for the insured to be paid on his or her total loss.

71. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every Class member were owed sales tax calculated as a percentage of the adjusted vehicle value.

72. Defendant refused or otherwise failed to pay ACV Sales Tax as part of its payment to Plaintiff and every Class member, following Defendant's determination that a vehicle was a total loss.

73. Defendant's failure to provide payment for the ACV sales tax constitutes a material breach of contract with Plaintiff and every Class member.

74. As a result of said breaches, Plaintiff and the Class members are entitled, under Defendant's insurance Policies, to sums representing the benefits owed for ACV sales tax, as well as costs, pre-judgment and post-judgment interest, injunctive relief and other relief as is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a trial by jury on all triable issues and seek and pray for relief and judgment as follows:

a. For an Order certifying this action as a Class Action on behalf of the Class described above;

b. For an award of compensatory damages for Plaintiff and members of the Class in amounts owed under the Policies;

c. For all other damages according to proof;

d. For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

e. For pre- and post- judgment interests on any amounts awarded; and

g. For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: September 23, 2021.

**EDELSBERG LAW, PA**

By: <u>/s/ Scott Edelsberg</u>
Scott Edelsberg
CA State Bar No. 330990
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: (310) 438-5355
scott@edelsberglaw.com

*For Plaintiff and the Putative Class*